1

2

3

4

5

6

7                          **UNITED STATES DISTRICT COURT**

8                          **WESTERN DISTRICT OF WASHINGTON**

                                    **AT SEATTLE**

9   SUE HONG and JOON HONG, on behalf of
    Plaintiffs and all other similarly situated          CASE NO:
10  Plaintiffs,
                                                         **BANK OF AMERICA'S NOTICE OF**
11              Plaintiffs,                               **REMOVAL OF CLASS ACTION**

        v.

12  BANK OF AMERICA, N.A., individually and
    as successor-in-interest, QBE INSURANCE
13  CORP., and DOES 1-10,

14              Defendants.

15                          <u>**NOTICE OF REMOVAL**</u>

16          **PLEASE TAKE NOTICE** that Defendant Bank of America, N.A. ("Bank of America"),

17  by its undersigned counsel, hereby removes the above-captioned action, *Hong, et al. v. Bank of*

18  *America, N.A., et al.* (the "Hong Action"), which is currently pending in the Superior Court of the

19  State of Washington, King County, Case No. 19-2-27999-1 KNT, to the United States District

20  Court for the Western District of Washington at Seattle, pursuant to 28 U.S.C. §§ 1332, 1441,

21  1446, and 1453.  As grounds for removal, Bank of America states as follows:

22                              <u>**INTRODUCTION**</u>

23          This case is removable under 28 U.S.C. § 1441 and the Class Action Fairness Act of 2005,

24  P.L. 109-2, as codified at 28 U.S.C. § 1332(d) and 28 U.S.C. § 1453 ("CAFA").  Pursuant to

NOTICE OF REMOVAL – Page 1                          Wright, Finlay & Zak, LLP
                                                    612 S. Lucile St., Suite 300
                                                    Seattle, WA 98108
                                                    206-691-8663

CAFA, federal courts have original jurisdiction over class actions where: 1) the putative class consists of at least 100 members (28 U.S.C. § 1332(d)(5)(B)); 2) there is minimal diversity between the parties (28 U.S.C. § 1332(d)(2)(C)); and 3) the aggregate class-wide amount in controversy exceeds $5,000,000, exclusive of interest and costs (28 U.S.C. § 1332(d)(2) and (6)). Based upon Plaintiff's allegations (which Bank of America expressly denies and intends to demonstrate are without merit), removal here is proper because CAFA's requirements are met, no exception to CAFA jurisdiction applies, and Bank of America has timely removed.

## BACKGROUND

1.      On October 15, 2019, Plaintiffs Sue Hong and Joon Hong ("Plaintiffs") filed a putative class action Complaint for (1) Breach of Contract, (2) Violations of the Duty of Good Faith and Fair Dealing, (3) Violations of Washington Consumer Protection Act, R.C.W. §§ 19.86.020, *et seq*., (4) Negligent Supervision and (5) Breach of Fiduciary Duty (the "Complaint") against Bank of America and QBE Insurance Corp. ("QBE Insurance") (collectively, "Defendants") in the Superior Court of the State of Washington, King County.[1]  *See* **Exhibit A**.

2.      Bank of America was served with the Summons and Complaint on October 25, 2018.

3.      Plaintiffs allege that Bank of America allowed QBE Insurance, as its agent, to inflate the premiums for lender placed insurance chargeable to Plaintiffs and other borrowers in the State of Washington by obtaining insurance based on the inflated property valuations.  Compl.

---

[1] Bank of America sets forth the allegations in Plaintiffs' Complaint solely to establish the prerequisites for jurisdiction and removal of this action.  By filing this Notice of Removal, Bank of America does not waive any objections it may have as to lack of jurisdiction over Defendant, or venue, or any other defenses or objections to the Hong Action, including but not limited to the viability of class certification.  Bank of America intends no admission of fact, law, or liability by this Notice, and reserves all defenses, motions and pleas.

Wright, Finlay & Zak, LLP
612 S. Lucile St., Suite 300
Seattle, WA 98108
206-691-8663

¶¶ 14-15, 36-38.  Specifically, Plaintiffs allege that QBE Insurance placed insurance based on estimated replacement costs that were higher than the actual costs of replacement.  *Id.* at ¶¶ 44.

4.    Plaintiffs seek actual and statutory damages, injunctions, restitution, treble damages (up to the statutory limit) pursuant to the Washington Consumer Protection Act, civil penalties for each and every violation of the Washington Consumer Protection Act, and reasonable costs and attorney's fees.

## REMOVAL IS PROPER UNDER 28 U.S.C. §§ 1332(d) and 1453

## (CAFA JURISDICTION)

5.    This Court has original jurisdiction under 28 U.S.C. §§ 1332(d) and 1453 on the basis of CAFA jurisdiction because (1) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," (2) the citizenship of at least one putative class member is different from that of Bank of America, and (3) the putative class consists of more than 100 proposed class members.  *See* 28 U.S.C. §§ 1332(d)(2), (d)(2)(C) and (d)(5)(B).

*Citizenship of the Parties (28 U.S.C. § 1332(d)(2)(C)).*

6.    For purposes of diversity of citizenship, Plaintiffs are citizens of Washington because, as alleged in the Complaint, "Plaintiffs are residents of the State of Washington." Compl. ¶ 1.

7.    For purposes of diversity of citizenship, Bank of America is a citizen of North Carolina because it is a national banking association and its articles of association designate its main office as located in Charlotte, North Carolina.  *See Rouse v. Wachovia Mortg., FSB*, 747 F.3d 707, 715 (9th Cir. 2014) ("a national banking association is a citizen only of the state in which its main office is located") (citations omitted); *McClellon v. Wells Fargo Bank, N.A.*, 2018 WL 3630299, at *2 (W.D. Wash. Jul. 31, 2018) (same) (citations omitted); *see also Jones v. Bank of Am., N.A.*, No. 2:11cv443, 2012 WL 405053, at *2 (E.D. Va. Feb. 7, 2012) (stating that Bank

Wright, Finlay & Zak, LLP
612 S. Lucile St., Suite 300
Seattle, WA 98108
206-691-8663

of America, N.A. is a citizen of North Carolina for federal diversity jurisdiction purposes); *Hill v. Bank of Am. Corp.*, No. 1:06-CV-804, 2006 WL 1518874, at *1 (N.D. Ga. May 30, 2006) (Bank of America, N.A. "is a national banking association located in the State of North Carolina, as designated in its articles of association.")

8.    For purposes of diversity citizenship, QBE Insurance is a citizen of Delaware and New York because QBE Insurance is incorporated in Delaware and has its principal place of business in New York.  *See* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business…"); *see also Northwest Railway Museum v. Indian Harbor Insurance Company*, 2017 WL 4466619, at *2 (W.D. Wash. Oct. 5, 2017) (A "corporation can be a citizen in two states: (1) its state of incorporation and (2) the state where its principal place of business, typically its headquarters, is located.") (citations omitted).

9.    Accordingly, because Defendants and members of the putative class, including Plaintiffs, are residents of different states, the Hong Action satisfies the diversity of citizenship requirement. 28 U.S.C. § 1332(d)(2)(C).

*Putative Class Size (28 U.S.C. §§ 1332(d)(5)(B)).*

10.    Removal is proper under 28 U.S.C. § 1332(d)(5)(B) because the number of members of the proposed class exceeds 100.

11.    Plaintiffs define the proposed class as:

> [A]ll customers who bought or acquired properties in Washington State, within the applicable period of the statute of limitations[; and]

> [A]ll persons in the State of Washington where defendants provided mortgage/serviced mortgage and arranged insurance coverage for the property within the six years before the commencement of this action.

Compl. ¶¶ 67, 119.

Wright, Finlay & Zak, LLP
612 S. Lucile St., Suite 300
Seattle, WA 98108
206-691-8663

12.    The class definition clearly encompasses more than 100 people because, as drafted, it literally includes "all customers who bought or acquired properties in Washington State[] within the applicable period." *Id.* at 67.  Plaintiffs themselves "believe[] there are numerous members of the Class in King County, Washington, at least in the hundreds," and that when the thousands of mortgages "sold and serviced" by Bank of America and QBE Insurance are "added up during the period of statute of limitations, [they] encompass[] hundreds or thousands of class members." *Id.*

13.    Accordingly, CAFA's numerosity requirement is satisfied.

*Amount in Controversy is Satisfied (28 U.S.C. §§ 1332(d)(2)).*

14.    For removal purposes, establishing the amount in controversy under CAFA requires only that a defendant provide a short and plain statement of the basis for jurisdiction— the equivalent of that required for a plaintiff filing a complaint.  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).  This means "a defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id*.

15.    While Bank of America denies that Plaintiffs are entitled to recover any amount, and specifically denies that certification of any class is proper, Plaintiffs' allegations, requests for relief, and putative class definition plausibly place the amount in controversy in this case above CAFA's $5,000,000 aggregate threshold for jurisdictional purposes.[2]  28 U.S.C. §§ 1332(d)(2) and (6).

16.    Plaintiffs allege that their claims "are typical of the claims of the Class" and "Plaintiffs suffered from the same….damages as the rest of the Class."  Compl. ¶ 71.  As noted previously, Plaintiffs allege the Class "encompasses hundreds or thousands of class members."

---

[2] *See Lewis v. Verizon Commc'ns, Inc*., 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability.").

Wright, Finlay & Zak, LLP
612 S. Lucile St., Suite 300
Seattle, WA 98108
206-691-8663

*Id.* at 68.  Indeed, their proposed class includes, in part, "all customers who bought or acquired properties in Washington State[] within the applicable period."  *Id.* at 67.  Although Plaintiffs' allegations pertain to force placed insurance, Plaintiffs allege a broad class which clearly places more than $5,000,000 in controversy.

17.     Plaintiffs seek, on behalf of themselves and the putative class, actual damages and "restitution to each Class member of damages incurred…. [in] an estimated amount of sums by which Defendants were unjustly enriched or on the basis of quantum meruit."  *Id.*, at Prayer for Relief ¶¶ 1, 3.  The request for actual damages and restitution alone places more than $5,000,000 in controversy.

18.     Plaintiffs also seek treble damages under the Washington Consumer Protection Act, which may be awarded in the amount of up to $25,000 per violation.   Compl. ¶ 103; R.C.W. 19.86.090.  Additionally, Plaintiffs request civil penalties of up to $10,000 per violation of the Washington Consumer Protection Act.  *Id.* at Prayer for Relief ¶ 5; R.C.W. 19.86.020. Bank of America's preliminary investigation identified over 500 lender placed insurance policies during the alleged class period—this alone also places more than $5,000,000 in controversy.

19.     Plaintiffs also seek an "injunction or injunctions"[3] and attorney's fees.[4]

20.     Thus, the total amount in controversy in this matter surpasses the $5,000,000 jurisdictional threshold set by 28 U.S.C. § 1332(d)(2).

### No Exception to CAFA Jurisdiction Exists.

21.     Although Bank of America denies that it bears the burden of showing that CAFA's

---

[3] "In actions seeking . . . injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."  *Hunt v. Washington State Apple Advertising Com'n*, 432 U.S. 333, 347 (1997); Compl. at Prayer for Relief ¶ 2.

[4] *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) (attorneys' fees properly considered in determining amount in controversy where legal claims may support award of attorney's fees); at Prayer for Relief ¶ 6 (Plaintiffs claim they are entitled to attorney's fees with respect to the Washington Consumer Protection Act claim under R.C.W. 19.86.090).

Wright, Finlay & Zak, LLP
612 S. Lucile St., Suite 300
Seattle, WA 98108
206-691-8663

1    exceptions to jurisdiction in 28 U.S.C. §§ 1332(d)(4), (5), and (9) are inapplicable, none apply.

2        22.    <u>First</u>, the exceptions in 28 U.S.C. § 1332(d)(4) do not apply because, as already

3    noted, Bank of America is a citizen of North Carolina and QBE Insurance is a citizen of

4    Pennsylvania, so no defendant is a citizen of the State in which the Complaint was originally

5    filed—Washington.

6        23.    <u>Second</u>, the exception in 28 U.S.C. § 1332(d)(5)(A) does not apply because neither

7    Bank of America, nor QBE Insurance, are a State, State official, or other governmental entity.

8        24.    <u>Third</u>, the exception in 28 U.S.C. § 1332(d)(5)(B) does not apply because, as

9    previously indicated, the number of putative class members is greater than 100.

10       25.    <u>Finally</u>, the exception in 28 U.S.C. § 1332(d)(9) does not apply because this case

11   does not involve a claim under the securities laws and does not "relate[] to the internal affairs or

12   governance of a corporation or other form of business enterprise" or "arise[] under or by virtue of

13   the laws of the State in which such corporation or business enterprise is incorporated or

14   organized." 28 U.S.C. § 1332(d)(9)(B).

15       *Jurisdiction is Mandatory.*

16       26.    Jurisdiction is mandatory, not discretionary, under CAFA because Defendants are

17   not a citizens of Washington, the "state in which th[is] action was originally filed." 28 U.S.C.

18   § 1332(d)(3).

19       **OTHER PROCEDURAL REQUIREMENTS FOR REMOVAL ARE SATISFIED**

20       27.    <u>Removal is Timely</u>.  This removal is timely under 28 U.S.C. § 1446(b)(1) because

21   Bank of America removed the Hong Action within 30 days of service of the Complaint.  *See* 28

22   U.S.C. § 1446(b)(1) ("The notice of removal of a civil action or proceeding shall be filed within

23   30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial

24   pleading setting forth the claim for relief upon which such action or proceeding is based, or within

Wright, Finlay & Zak, LLP
612 S. Lucile St., Suite 300
Seattle, WA 98108
206-691-8663

1    30 days after the service of summons upon the defendant if such initial pleading has then been

2    filed in court and is not required to be served on the defendant, whichever period is shorter."); *see*

3    *also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).  Bank of

4    America was served with the Complaint on October 25, 2019.

5         28.    <u>Removal to Proper Court</u>.    Pursuant to 28 U.S.C. §§ 1332(d), 1441(a), and

6    1446(a), this Notice of Removal is being filed in the United States District Court for the Western

7    District of Washington at Seattle, which is part of the "district and division" embracing the place

8    where the Hong Action was filed—King County, Washington.

9         29.    <u>Signature</u>.  This Notice of Removal is signed pursuant to Rule 11 of the Federal

10   Rules of Civil Procedure, in compliance with 28 U.S.C. § 1446(a).

11        30.    <u>Pleadings and Process</u>.  Copies of all process, pleadings and orders served upon

12   Bank of America in the Hong Action are attached hereto as **Exhibit A**, in compliance with 28

13   U.S.C. § 1446(a).

14        31.    <u>Notice of Filing of Notice of Removal</u>.  Attached hereto as **Exhibit B** is a copy of

15   the Notice of Filing of Notice of Removal of Class Action, without exhibits, which will be

16   promptly filed with the Clerk of the King County Superior Court and served on the adverse

17   parties, pursuant to 28 U.S.C. § 1446(d).

18        32.    <u>Bond and Verification</u>.  Pursuant to Section 1016 of the Judicial Improvements and

19   Access to Justice Act of 1988, no bond is required in connection with this Notice of Removal.

20   Pursuant to Section 1016 of the Act, this Notice need not be verified.

21                                    **<u>CONCLUSION</u>**

22        Based upon the foregoing, this Court has jurisdiction over this matter pursuant to 28

23   U.S.C. §§ 1332(d), and 1453, and the claims may be removed to this Court under 28 U.S.C.

24   §§ 1441 and 1446.

NOTICE OF REMOVAL – Page 8

Dated: November 22, 2019

Respectfully submitted,

**WRIGHT, FINLAY & ZAK, LLP**

By: /s/ Laura N. Coughlin
LAURA N. COUGHLIN, WSBA No. 46124

Attorneys for Defendant
BANK OF AMERICA, N.A.

Wright, Finlay & Zak, LLP
612 S. Lucile St., Suite 300
Seattle, WA 98108
206-691-8663

1

<u>CERTIFICATE OF SERVICE</u>

2

3      I am employed in the County of King, State of Washington.  I am over the age of eighteen
(18) and not a party to the within action. My business address is 612 S. Lucile St., Suite 300,

4      Seattle, WA 98108.

5      On November 22, 2019, I served the foregoing documents described as:
       1)  Notice of Removal.

6

7   [X]  (BY MAIL) I caused such envelope with postage thereon fully prepaid to be placed in the
           United States mail at Seattle, WA to the parties and addresses below. I am readily familiar

8          with the firm's business practice for collection and processing of correspondence for
           mailing with the U.S. Postal Service pursuant to which practice the correspondence is

9          deposited with the U.S. Postal Service the same day in the ordinary course of business.

10
           Harish Bharti, Esq.
11         Bharti Law Group, PLLC
           6701 37th Avenue NW
12         Seattle, Washington 98107
           *Attorney for Plaintiffs*

13         Jason Anderson
           Law Office of Jason Anderson
14         8015 15th Avenue NW, Suite 5
           Seattle, Washington 98117
15         *Attorney for Plaintiffs*

16
    [X]  (FEDERAL) I declare that I am employed in the office of a member of the bar of this
17         court at whose direction the service was made.

18      I declare under penalty of perjury of the laws of the United States that the foregoing is
       true and correct. Executed on November 22, 2019, at Seattle, WA.

19

20                              */s/ Karina Khamidullina*
                               Karina Khamidullina

21

22

23

24

Wright, Finlay & Zak, LLP
                                                                          612 S. Lucile St., Suite 300
                                                                          Seattle, WA 98108
                                                                          206-691-8663

ØŠÒÖ
GŒFJÁJÔVÁGŘÆGKÚHÁÚT
SŒÕÁ̃ÙWÞVÝ
ÙWÚÕÜŒJÜÁ̃ÙWÜVÁ̃ŠÒÜS
ÒÈŠÒÒ
ÔŒŮŮÅÆŒJÈŒ̃JJJÈ̃ASÞV

## IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
## IN AND FOR KING COUNTY

| | |
|---|---|
| SUE HONG and JOON HONG, on behalf of Plaintiffs and all other similarly situated, | **CASE NO.** |
| Plaintiffs | |
| vs. | **SUMMONS** |
| BANK OF AMERICA, N.A, individually and as successor-in-interest, QBE INSURANCE CORP., and DOES 1-10. | |
| Defendants. | |

TO THE DEFENDANTS:

A lawsuit has been started against you in the above-entitled court by Plaintiffs above named.  Plaintiffs' claims are stated in the written complaint, a copy of which is served upon you with this summons.

In order to defend against this lawsuit, you must respond to the complaint by stating your defense in writing, and serve a copy upon the undersigned attorneys for the plaintiffs within 20 days after the service of this summons, excluding the day of service, if served within the State of Washington (or within 60

SUMMONS- 1

Harish Bharti, Esq.
**BHARTI LAW GROUP, PLLC**
6701 37th Ave NW■ Seattle, WA 98117
Ph: (206) 789-6122■ Fax (866) 664-0667
bhartilawyer@gmail.com

days after said service if served outside the State of Washington), or a default judgment may be entered against you without notice.  A default judgment is one where Plaintiffs are entitled to what they ask for because you have not responded. If you serve a notice of appearance on the undersigned attorney, you are entitled to notice before a default judgment may be entered.

You may demand that the Plaintiffs file this lawsuit with the court.  If you do so, the demand must be in writing and must be served upon the person signing this summons.  Within fourteen (14) days after you serve the demand, the Plaintiff must file this lawsuit with the court, or the service on you of this summons and complaint will be void.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

This summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.

Date: 10-15-2019

| **BHARTI LAW GROUP, PLLC** <br> By; <br><br> _[signature]_ <br><br> Harish Bharti, WSBA # 23960 <br> Attorney for plaintiffs | **Law Office of Jason Anderson** <br><br> /s/ Jason Anderson <br> _____ <br> Jason Anderson, WSBA # 32232 <br> Attorney for plaintiffs |

SUMMONS- 2

**Harish Bharti, Esq.** <br> **BHARTI LAW GROUP, PLLC** <br> 6701 37th Ave NW■ Seattle, WA 98117 <br> Ph: (206) 789-6122■ Fax (866) 664-0667 <br> bhartilawyer@gmail.com

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY**

| | |
|---|---|
| SUE HONG and JOON HONG, on behalf of Plaintiffs and all other similarly situated,<br><br>Plaintiffs<br><br>vs.<br><br>BANK OF AMERICA, N.A, individually and as successor-in-interest, QBE INSURANCE CORP., and DOES 1-10.<br><br>Defendants. | CASE NO.<br><br>**CLASS ACTION COMPLAINT** |

Plaintiffs Sue Hong and Joon Hong file this class action complaint on behalf of themselves and all other similarly situated against BANK OF AMERICA, N.A ("Bank of America") and QBE INSURANCE CORP., ("QBE").

## I. NATURE OF THE CASE

1. Plaintiffs, customers of Defendants, have been the victims of unfair, deceptive acts or practices, misrepresentations, breaches of contract, violations of the Consumer Protection Act, violations of the duty of good faith and fair

CLASS ACTION COMPLAINT- 1

**Harish Bharti, Esq.**
**BHARTI LAW GROUP, PLLC**
6701 37th Ave NW■ Seattle, WA 98117
Ph: (206) 789-6122■ Fax (866) 664-0667
bhartilawyer@gmail.com

dealing, and other wrongful acts and practices committed by Defendants in the course of transactions involving the Defendants' mortgage and servicing practices. Plaintiffs are residents of the State of Washington, and the primary Defendants are companies doing business in the State of Washington.

2. Plaintiffs, Sue Hong and Joon Hong, bring this action against defendants for breach of various statutes and common law claims arising from Bank of America allowing QBE Insurance Company, as its agent, to inflate the premiums chargeable to Sue Hong and Joon Hong for lender placed insurance on their property that were based on unreasonable and inappropriate criteria. Plaintiffs Sue Hong and Joon Hong bring such claims individually and on behalf of similarly situated borrowers across the State of Washington.

3. The questionable, unreasonable, unconscionable and illegal practices related to force-placed insurance and exceptionally profitable exclusive relationships, collusive activities, and circular arrangements among the mortgage lenders and their cooperating insurers were publicly exposed through an article that also included the defendants.

4. As a background, lenders and servicers force-place insurance when a borrower fails to obtain or maintain proper hazard, flood, or wind insurance coverage on property that secures a loan. Under the typical mortgage agreement, if the insurance policy lapses or provides insufficient coverage, the

CLASS ACTION COMPLAINT- 2

Harish Bharti, Esq.
**BHARTI LAW GROUP, PLLC**
6701 37th Ave NW■ Seattle, WA 98117
Ph: (206) 789-6122■ Fax (866) 664-0667
bhartilawyer@gmail.com

lender has the right to "force place" a new policy on the property and then charge the premiums to the borrower.

5. Plaintiffs do not challenge the practice of force-placing insurance, but rather the manner in which Defendants exercise their power to force place insurance under borrowers' mortgages and the law.

**Backdrop to Claims**

6. The backdrop to this action arises from an unlawful scheme executed between Bank of America and QBE Insurance Company and related entities that was the subject of regulatory enforcement and a class action settlement in the case *Hall v. Bank of Am. NA*,. See *Hall v. Bank of Am. NA*, 2014 US Dist. LEXIS 177155.

7. In that case, the parties settled claims alleging that Bank of America engaged in a scheme with QBE Insurance Company wherein, QBE Insurance Company would pay a kickback to Bank of America in return for providing all insurance policies placed by Bank of America on borrowers' properties.

8. The scheme worked as follows:

a. Nearly all borrowers serviced by Bank of America have agreements containing similar requirements (1) requiring the borrower to maintain insurance on their property, and (2) allowing Bank of America to take reasonable steps to place insurance on borrower property if the borrower defaults on this obligation

CLASS ACTION COMPLAINT- 3

**Harish Bharti, Esq.**
**BHARTI LAW GROUP, PLLC**
6701 37th Ave NW■ Seattle, WA 98117
Ph: (206) 789-6122■ Fax (866) 664-0667
bhartilawyer@gmail.com

and (3) to charge the cost of the insurance to the borrower.

b. Defendant QBE is one of two insurance providers that directly or indirectly provided most of the lender-placed insurance in the market.

c. Instead of competing for business based on price and service, defendant QBE entered into an agreement with Bank of America wherein QBE would (1) track all of the borrowers of Bank of America, and (2) pay Bank of America a kickback funneled through a captive entity related to Bank of America. The effect of this improper arrangement was that Bank of America was motivated to procure insurance through defendant QBE based on this kickback interest and not based on evaluating the reasonable cost of replacement value of the property and insurance on the property.

9. Pursuant to the class action settlement, the kickback scheme was terminated in 2014. However, defendant Bank of America continued to retain QBE Corporation to monitor and place insurance on properties through at least 2018, with effectively no oversight over its operations.

10. The cost of lender-placed insurance on the properties of borrower is based on the total dwelling coverage provided in the policy multiplied by a rate per dollar of coverage filed each year with the Washington State Insurance Commissioner.

11. Thus, if QBE identifies an inflated cost of replacement on the property,

CLASS ACTION COMPLAINT- 4

Harish Bharti, Esq.
**BHARTI LAW GROUP, PLLC**
6701 37th Ave NW∎ Seattle, WA 98117
Ph: (206) 789-6122∎ Fax (866) 664-0667
bhartilawyer@gmail.com

it gets to charge a higher premium than insurance policy provided based on an accurate cost of replacement.

12. Defendant Bank of America left it up to defendant QBE to identify the appropriate limit of dwelling insurance on properties for the purpose of placing lender-placed insurance.

13. Upon information and belief, defendant QBE would not examine actual information about a borrower's property, such as the location of the property in relation to a fire station, the square footage of the property or other relevant factors.

**Current Claims**

14. In this case, the same players are before this court, because defendant Bank of America continues to use some of the same improper tactics and use defendant QBE Insurance to determine the limit of dwelling coverage on Borrowers' properties and impose lender-placed insurance policies, while charging the higher cost of the policy to its borrowers.

15. Defendant QBE Insurance was motivated to select an inflated limit of dwelling coverage on properties and continued unchecked, while defendant Bank of America failed to exercise any oversight. Defendants continue to use the higher replacement value and coverage for the properties which were no longer valid due to decrease in property values and replacement costs of dwellings after

CLASS ACTION COMPLAINT- 5

**Harish Bharti, Esq.**
**BHARTI LAW GROUP, PLLC**
6701 37th Ave NW■ Seattle, WA 98117
Ph: (206) 789-6122■ Fax (866) 664-0667
bhartilawyer@gmail.com

2008(after the burst of so called "real-estate bubble").

## II. CLASS REPRESENTATIVE PLAINTIFFS

16. Class Plaintiffs, Sue Hong and Joon Hong, own property commonly known as 22515 10th Ave S, Des Moines, King County, Washington. Plaintiffs had purchased or otherwise acquired home with a mortgage or mortgages or their mortgage was serviced by the Defendants within the six years before the commencement of this action.

17. The Plaintiffs bring this Complaint on their own behalf and on behalf of a Class of similarly situated customers of the Defendants who purchased mortgage or related servicing. Plaintiffs bring these claims, in their representative capacity, on behalf of an entire Class and any subclasses that the Court may deem suitable or necessary for prosecution of these claims.

18. The Plaintiffs Class Representatives file this complaint and institute these proceedings under the provisions of the Washington Consumer Protection Act, RCW 19.86 et seq. and other provisions of the laws of the State of Washington, and CR 23.

19. The class includes all persons who acquired mortgages with Defendant, its affiliates, and its subsidiaries during the six years before Plaintiffs commenced this action and encountered similar treatment.

## III. DEFENDANTS

CLASS ACTION COMPLAINT- 6

**Harish Bharti, Esq.**
**BHARTI LAW GROUP, PLLC**
6701 37th Ave NW■ Seattle, WA 98117
Ph: (206) 789-6122■ Fax (866) 664-0667
bhartilawyer@gmail.com

20.    Defendant BANK OF AMERICA, N.A, ("BOA") is a Delaware corporation, insured by the Federal Deposit Insurance Corporation. Bank of America has its principal place of business in Charlotte, North Carolina. Bank of America provides services including but not limited to banking, insurance, investments, property mortgages, and consumer and commercial finance in Washington and across North America. Defendant Bank of America is a National Bank that does business in King County, Washington.

21.    Defendant QBE INSURANCE CORPORATION is a Pennsylvania corporation and is licensed in Washington State. QBE Insurance Corporation is a wholly-owned subsidiary of QBE Reinsurance Corporation, a Delaware corporation. QBE Insurance Corporation writes force-placed insurance policies through numerous sub-agencies, including QBE First Insurance Agency and QBE Specialty Insurance Company.

22.    Defendants do business in the State of Washington and have sufficient minimum contacts with the State of Washington for this court to have jurisdiction of this matter.

23.    Defendants are liable for the wrongful acts of their agents and employees whether said wrongful acts are committed in the course and scope of agencies or employment.

24.    Plaintiffs reserve the right to amend the pleadings to add names of

CLASS ACTION COMPLAINT- 7

other, or successor, corporations, as discovered, as well as to add a claim for

piercing the corporate veil, naming responsible parties individually and as marital

communities, as cause to do so is discovered.

25.    True names and identities of Does 1-10, are not known to Plaintiffs

at this time and will be added after Discovery is conducted.

## IV. JURISDICTION

26.    The Class Representative files this complaint and institute these

proceedings under the provisions of the Consumer Protection Act, RCW 19.86,

WAC 208-660-500, and other applicable laws of the State of Washington.

27.    The Defendants have engaged in the conduct set forth in this

complaint in the State of Washington.

28.    This court has subject matter jurisdiction pursuant to RCW

2.08.010.

29.    This court has personal jurisdiction over Defendants.

## V. VENUE

30.    Venue is proper in King County pursuant to RCW 4.12.020 and

4.12.025, and applicable Court Rules 82, because Defendants transact business

in King County and the misconduct described in this Class Action Complaint

occurs within King County, Washington State, where properties of consumers are

located and consumers were wronged.

CLASS ACTION COMPLAINT- 8

## VI. GENERAL FACTS AND DEFENDANT'S EARLIER SCHEME

31.     Prior to the 2014 class settlement, the scheme worked as follows: The Lender and Insurance company (Bank of America and QBE), purchased master or "umbrella" insurance policies that would cover the entire portfolio of mortgage loans. In exchange, QBE obtained the exclusive right to force-place insurance on property securing a loan within the portfolio when the borrower's insurance lapsed or the lender determined the borrower's existing insurance is inadequate. The insurer monitored the lender's loan portfolio for lapses in borrowers' insurance coverage. Once a lapse is identified, QBE sent notice to the borrower that insurance will be "purchased" and force-placed if the voluntary coverage is not continued. If a lapse continued, the insurer notified the borrower that insurance is being force-placed at his or her expense.

A. No individualized underwriting ever takes place for the force-placed coverage.

B. Defendants require, or at least permit, the insurer to automatically place this coverage when a borrower's policy lapses. In many instances, the insurance lapse is not discovered for months or even years after the fact.

C.  Despite the absence of any claim or damage to the property during the period of lapse, retroactive coverage is placed on the property and the past premiums charged to the borrower.

CLASS ACTION COMPLAINT- 9

D.    Once coverage is forced on the property, the lender or servicer charges the borrower for the insurance premiums and, through QBE, automatically deducts the amount from the borrower's mortgage escrow account, or adds it to the balance of the borrower's loan.

E.    The lender or servicer then pays the premium to the insurer who then kicks back a set percentage of the premium to the mortgage lender as a "commission."

F.    The money paid back to the lender is not given in exchange for any services provided; it is simply grease paid to keep the force-placed machine moving.

G.    In an attempt to mask the kickback as legitimate, the insurer sends a disclosure to the borrower that the affiliate may receive a "commission" or "compensation" for helping the lender to procure a force-placed policy. In reality, however, no evaluation or work is ever done to procure insurance for that particular borrower because the coverage comes through the master or umbrella policy already in place.

H.    In addition, force-placed insurance providers enter into essentially riskless "captive reinsurance arrangements" with lenders and their affiliates to "reinsure" the property insurance force-placed on borrower.

I.    Ultimately it is the unsuspecting borrower who suffers the

CLASS ACTION COMPLAINT- 10

consequences of these unconscionable and unlawful practices.

J. It is unknown to borrowers and defendants fail to disclose in the mortgage agreements that lenders and loan servicers have exclusive arrangements with certain insurers pursuant to which the lenders, servicers, and insurers manipulate the force-placed insurance market and artificially inflate premiums.

K. The premiums are inflated to provide lenders and servicers with kickbacks disguised as "commissions" (usually paid to an affiliate), or provide the lender or servicer (through an affiliate) with lucrative reinsurance arrangements as well as to include unmerited charges. The borrower is then forced to pay the inflated premiums.

L. Permitting a lender to forcibly place insurance on a mortgaged property and charge the borrower the full cost of the premium is neither a new concept nor a term undisclosed to borrowers in mortgage agreements. The standard form mortgage agreements used by most major lenders include a provision requiring the borrower to maintain hazard insurance coverage—and flood insurance coverage if the property is located in a Special Flood Hazard Area as determined by the Federal Emergency Management Agency—on the property securing the loan, and in the event the insurance lapses, permit the lender to obtain force-placed coverage and charge the premiums to the borrower rather than declare

CLASS ACTION COMPLAINT- 11

the borrow in default.

32.     Under this highly profitable force-placed insurance scheme, Bank of America and QBE was incentivized to purchase and force-place insurance policies with inflated premiums on borrowers' properties because the higher the cost of the insurance policy, the higher the kickback.

33. Defendant QBE also entered into agreements with the BOA Defendants whereby the insurer provides servicing activities on the entire loan portfolio at below cost. The servicing costs are added into the force-placed premiums which are then passed on to the borrower. QBE is able to provide these services below cost because of the enormous profits they make from the hyper-inflated premiums charged for force-placed insurance. However, because insurance-lapsed mortgaged property comprises only 1–2% of the lenders' total mortgage portfolio, the borrowers who pay these premiums unfairly bear the entire cost to service the entire loan portfolio.

34.  The BOA Defendants may also overcharge borrowers by disregarding the Standard Mortgage Clause or the Lender's Loss Payable Endorsement ("LLPE") in the standard form mortgage agreement. Either of these clauses typically protects the lender for a period of at least ten days after the termination of the homeowner's voluntary insurance policy. Force-placed policies, however, take effect on the date of termination, and "double-cover" the property

CLASS ACTION COMPLAINT- 12

unnecessarily during the period covered by the LLPE or Standard Mortgage Clause. This means the borrower is charged for coverage for which the lender or servicer has no exposure.

**PRESENT SCHEME**

35.    Following the settlement of the class action with respect to the prior scheme, QBE agreed to stop paying kickbacks to Bank of America.

36.    Defendant QBE continued to provide Bank of America with these services as the sole provider of lender placed insurance for Bank of America in Washington.

37.    Upon information and belief, defendant QBE continued to provide Bank of America with low-cost administrative mortgage services through QBE and continued to receive the exclusive right to force-place insurance.

38. defendant QBE as agent for Bank of America did not take steps to determine the appropriate coverage for a dwelling when placing such policies.

**SUE HONG AND JOON HONG**

39. Plaintiffs Sue Hong and Joon Hong entered into mortgage agreements with defendant BOA, including substantially the following provisions:

> **A. Property Insurance**.    Borrower shall keep the improvements now existing or thereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.    The insurance shall be

CLASS ACTION COMPLAINT- 13

Harish Bharti, Esq.
**BHARTI LAW GROUP, PLLC**
6701 37th Ave NW■ Seattle, WA 98117
Ph: (206) 789-6122■ Fax (866) 664-0667
bhartilawyer@gmail.com

maintained in the amounts … and for the periods that Lender requires.

\*
\*
\*

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.   Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability, and might provide greater or lesser coverage than was previously in effect.   Borrower acknowledges that the cost of insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.   Any amounts disbursed by Lender under this Section 5 shall become additional debt of the Borrower secured by this Security Instrument ….

"If (a) Borrower fails to perform the covenants and agreements contained in this Security instrument . . . then Lender may do and pay for whatever is reasonable or appropriate to protect the Lender's interest in the Property."

B.  A separate paragraph dealing with charges a servicer may pass on to a borrower in the event of a default clarifies and provides:

"If (a) Borrower fails to perform the covenants and agreements contained in this Security instrument . . . then Lender may do and pay for whatever is reasonable or appropriate to protect the Lender's interest in the Property."

The term "reasonable or appropriate" limits the Lender's discretion as to the costs it passed on to a Borrower. A copy of the Deed of Trust is attached as

CLASS ACTION COMPLAINT- 14

Exhibit A to the Complaint.

40.    The other members of this class have substantially similar agreements.

41. Plaintiffs Sue Hong and Joon Hong admit defaulting on their obligation to maintain property insurance on their property.

42. Defendant QBE acting for Bank of America placed insurance on the property for years 2010 through 2018. From 2014 through 2018, Bank of America abdicated to QBE the process of evaluating and placing insurance on the Hong Property.

43.    The effect of this abdication is that it left for QBE unfettered discretion to determine the cost of the policy or the terms of the insurance policy it would place on borrower properties.

44.    For example, neither Bank of America nor its agents made any effort to determine whether the Dwelling coverage is appropriate. This matters to the consumers and class because QBE would calculate the coverage and cost of an insurance policy by using a multiplier and particular rate set in Washington. At the same time, this insurance policy provided that the maximum coverage offered by the policy is the amount necessary to repair or replace the dwelling structure on the property at issue.

45.    As an example, if the appropriate cost of replacing the structure of

CLASS ACTION COMPLAINT- 15

Harish Bharti, Esq.
**BHARTI LAW GROUP, PLLC**
6701 37th Ave NW■ Seattle, WA 98117
Ph: (206) 789-6122■ Fax (866) 664-0667
bhartilawyer@gmail.com

a property is $400,000.00, and the amount of dwelling insurance purchased for

that property is $500,000.00, that additional dwelling insurance of $100,000.00

provides no benefit to the borrower or even to Bank of America, but instead,

solely serves to inflate the cost of the insurance that is charged to the borrower.

46. Plaintiffs here do not challenge the BOA's right to force place

insurance in the first instance. Plaintiffs challenge Defendants' practice of

procuring and placing on their property an unreasonable amount of insurance

that provides no benefit to protect the collateral, but only serves to inflate the

balance they owe.

## VII. FACTUAL ALLEGATIONS

47.     Plaintiffs Sue and Joon Hong obtained a mortgage loan that at all

relevant times was serviced by BOA. This mortgage agreement constitutes the

attached deed of trust as Exhibit 1.

48.     The replacement cost of improvements on the Hong property is

$400,000.

49.     The Hongs allowed their dwelling insurance to lapse. Defendant

Bank of America procured an insurance policy from QBE effective from

10/21/2014 to 10/21/2015. The policy cost $4,677.30 which it charged to the

Hongs and provided for dwelling coverage of $519,700.00.

50.     Since the insurance policy would only cover replacement of the

CLASS ACTION COMPLAINT- 16

**Harish Bharti, Esq.**
**BHARTI LAW GROUP, PLLC**
6701 37th Ave NW■ Seattle, WA 98117
Ph: (206) 789-6122■ Fax (866) 664-0667
bhartilawyer@gmail.com

property at $400,000, the cost of the excessive coverage provides no benefit to them or to Bank of America.

51.     Defendant Bank of America procured a second insurance policy from QBE effective from 10/21/2015 to 10/21/2016. The policy cost $4,677.30, which it charged to the Hongs provided for dwelling coverage of $519,700.00.

52.     Defendant Bank of America procured a third insurance policy from QBE effective from 10/21/2016 to 10/21/2017. The policy costed $3,398.14 and provided for dwelling coverage of $404,540.00 which was substantially in line with the actual cost to repair or replace the dwelling.

53.     Plaintiffs were damaged by the above wrongful actions of the defendants, including the charge of excessive premiums to them based on the over-valuation of the appropriate cost of replacing the improvements on their property.

**VIII. ALLEGATIONS COMMON TO ALL CLAIMS**

54.     Defendants conduct a common practice and policy of questionable, unconscionable and illegal practices related to force-placed insurance, exclusive relationships, collusive activities, and circular arrangements among the mortgage lender, servicer and their cooperating insurers is at the heart of this litigation and raises common issues of fact and law regarding the policy, practice, implementation, and their illegality.  The policy was devised at the highest level of

CLASS ACTION COMPLAINT- 17

**Harish Bharti, Esq.**
**BHARTI LAW GROUP, PLLC**
6701 37th Ave NW■ Seattle, WA 98117
Ph: (206) 789-6122■ Fax (866) 664-0667
bhartilawyer@gmail.com

management and ownership, thereby creating a uniform set of common questions of fact and law that unify the Class.

55.    Defendants use the same wrongful practice relating to force-placed insurance with all customers and uniformly omit without due process.  The uniform omission and practice of omission and non-disclosure create a common issue of fact and law for all Class members.

56.    Class members suffer harm in precisely the same manner through defendants questionable, unconscionable and illegal practices related to force-placed insurance, exclusive relationships, collusive activities, and circular arrangements.   Defendants reap millions of dollars, each year, in ill-gotten profits by fooling their customers and performing this uniform unlawful activity upon their own customers.

57.    Mortgage lending and servicing entities are subject to the requirements of good faith and fair dealing, as set forth in the Uniform Commercial Code, RCW 62A.1-304:

RCW 62A.1-304; - Obligation of good faith. Every contract or duty within this title imposes an obligation of good faith in its performance and enforcement.

58.    Upon information and belief, the Defendants routinely violated the obligation of good faith and fair dealing, in perpetrating the scams set forth in this complaint, thereby posing a factual and legal issue that is common and uniform

CLASS ACTION COMPLAINT- 18

**Harish Bharti, Esq.**
**BHARTI LAW GROUP, PLLC**
6701 37th Ave NW■ Seattle, WA 98117
Ph: (206) 789-6122■ Fax (866) 664-0667
bhartilawyer@gmail.com

for all Class members.

59.    Mortgage lending and servicing entities in Washington are subject to Washington's Consumer Protection Act, RCW 19.86 et seq., which include, as an unlawful practice of locking out customers, as well as other unlawful practices described in this Class Action Complaint, thereby posing a factual and legal issue that is common and uniform for all Class members.

60.    Upon information and belief, the Defendants routinely violate Washington law, including but not limited to the Consumer Protection Act, RCW 19.86 et. seq. in perpetrating the scams set forth in this Class Action Complaint.

61.    Upon information and belief, the Defendants routinely violated RCW 19.86 et seq., as set forth in this Class Action Complaint, thereby creating common issues of fact and law that are uniform for all Class members.

62.    Mortgage lending and servicing entities in Washington State are subject to Consumer Protection Act, RCW 19.86 et seq. which provides for liberal construction of the chapter;

63.    Mortgage lending and servicing entities in Washington State are subject to the provisions of RCW 19.86 et seq.  Upon information and belief, the Defendants routinely violated RCW 19.86 et seq. in perpetrating the scams set forth in this Class Action Complaint, creating a common issue of law that is uniform for all Class members.

CLASS ACTION COMPLAINT- 19

**Harish Bharti, Esq.**
**BHARTI LAW GROUP, PLLC**
6701 37th Ave NW■ Seattle, WA 98117
Ph: (206) 789-6122■ Fax (866) 664-0667
bhartilawyer@gmail.com

64.     Mortgage lending and servicing entities in Washington are subject to the provisions of WAC 208-660-500.  Upon information and belief, the Defendants routinely violated WAC 208-660-500, in perpetrating the scams set forth in this Class Action Complaint.

65.     Plaintiffs reserves the right to add other and further violations of Washington law as discovery is conducted.

## IX.    CLASS REPRESENTATION ALLEGATIONS

66.     Plaintiffs re-allege the foregoing paragraphs and incorporate them by reference.

67.     Plaintiffs bring this action pursuant to Civil Rule 23, on behalf of the Class, which is defined as all customers who bought or acquired properties in Washington State, within the applicable period of the statute of limitations.

68.     Membership in the Class is so numerous as to make it impractical to bring all of the Class members before the Court. The exact number and identity of the Class members is unknown; however, Plaintiffs believes there are numerous members of the Class in King County, Washington, at least in the hundreds, with other members of the proposed class in other counties within Washington State.  This figure is subject to revision, after discovery.  Upon information and belief, Defendants sold and serviced thousands of mortgages to consumers which, added up during the period of the statute of limitations,

CLASS ACTION COMPLAINT- 20

Harish Bharti, Esq.
**BHARTI LAW GROUP, PLLC**
6701 37th Ave NW■ Seattle, WA 98117
Ph: (206) 789-6122■ Fax (866) 664-0667
bhartilawyer@gmail.com

encompasses hundreds or thousands of Class members.

69.     Plaintiffs are members of the Class.

70.     There are numerous and substantial questions of law and fact common to the Class which control this litigation, and which predominate over any individual issues. Included within the common questions are:

A.  Whether Defendants systematically violate provisions of the Revised Code of Washington and the Washington Administrative Code with unlawful and deceptive practices in their transactions with customers?

B.  Whether Defendants wrongfully manipulated, deceived, overcharged by inflating costs by their scams outlined in this Class Action Complaint, and other scams to be fully developed after discovery, and thus whether Plaintiffs suffered damages as a result of the wrongful actions of the defendants?

C. Whether Defendants violate the Consumer Protection Act of the State of Washington?

D. Whether Defendants commit negligent supervision of their agents and employees?

E. Whether Defendants breach contracts with customers in a uniform manner?

F. Whether Defendants breach their implied duty of good faith and fair dealing in a uniform manner?

CLASS ACTION COMPLAINT- 21

Harish Bharti, Esq.
**BHARTI LAW GROUP, PLLC**
6701 37th Ave NW■ Seattle, WA 98117
Ph: (206) 789-6122■ Fax (866) 664-0667
bhartilawyer@gmail.com

G. Whether Defendants designed and implemented a uniform wrongful practice and/or policy?

H. Whether Defendants' business model towards consumers rests upon the imposition of charges for goods and services that were never actually furnished to Plaintiffs or useful to Plaintiffs?

I. Whether Plaintiffs and the Class are entitled to damages, restitution, declaratory judgment, injunctive relief, or other relief?

J. Whether unlawful over charges by Defendant should be voided, or terms thereof adjusted?

K. The amount and nature of such damages to be awarded to Plaintiffs and the Class?

71.    Class Representative Plaintiffs' claims are typical of the claims of the Class, and Class Representatives have no interests adverse to the interests of the members of the Class.  Class Representative Plaintiffs suffered from the same misconduct and damages as the rest of the Class.

72.    Class Representative Plaintiffs will fairly and adequately protect the interests of the Class.  Class Representative Plaintiffs have retained counsel experienced and competent to prosecute class actions and complex litigation. Class Representative Plaintiffs is willing to appear at depositions, assist counsel in the prosecution of the action, and seek the best interests of the Class. Class

CLASS ACTION COMPLAINT- 22

Representative Plaintiffs will give complete support to the vigorous prosecution of the Class's claims.

73.     Adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to the adjudication and may impair and impede their ability to protect their interests.

74.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Absent a class action, the Class will continue to suffer damages and Defendants' violations of law will proceed without remedy.

75.     As a result of Defendants' wrongful business practices, improper conduct, and other wrongful acts and practices, Washington consumers have been harmed.

76.     Most individual members of the Class have little ability to prosecute an individual action, due to the complexity of the issues involved in this litigation and the significant costs attendant to litigation on this scale.

77.     This class action will result in the orderly and expeditious administration of the Class members' claims.  Economies of time, effort and expense will be fostered, and uniformity of decisions will be ensured.

78.     Class Counsel have substantial experience in class actions, having

CLASS ACTION COMPLAINT- 23

Harish Bharti, Esq.
**BHARTI LAW GROUP, PLLC**
6701 37th Ave NW■ Seattle, WA 98117
Ph: (206) 789-6122■ Fax (866) 664-0667
bhartilawyer@gmail.com

participated, and successfully resolved, multiple class actions in Washington and nation-wide.

79.    The circumstances of this action fulfill and meet the prerequisites, criteria, and requirements of a class action in accordance with CR 23.

## X.    CLAIMS AND CAUSES OF ACTION

### Count 1 -Breach of Contract

80.    Plaintiffs re-allege and incorporate paragraphs above as if fully set forth therein and further allege as follows.

81.    Upon information and belief, contracts, quasi contracts, contracts implied in fact, or contracts implied in law were formed between Defendants and Plaintiffs.

82.    Defendants breached the aforementioned provisions of the contract / Deed of Trust.

83.    Defendants were unjustly enriched by the practices outlined above.

84.    BOA and QBE artificially selected an inflated value for the dwelling on the Hong property on or before early 2014 for the purpose of placing insurance on the property.

85.    By artificially inflating the stated value of the dwelling well in excess of its actual value, defendant BOA was able to charge higher premiums than it could have charged if it had correctly valued the Hong property.

CLASS ACTION COMPLAINT- 24

86.     One possible reason for this artificial valuation is that Defendant Bank of America at the time was benefitting from a kickback of insurance premiums from QBE for its insurance policies. Defendant QBE also benefited from the higher premiums even if it had to kickback some to Bank of America.

87.     Defendant BOA acted unreasonably in selecting this high valuation for Ms. Hong's property.

88.     The insurance premiums charged to plaintiffs' escrow account were not reasonable.

89.     Defendant BOA based its right to charge premiums to plaintiffs' escrow account on provisions in the Deed of Trust that only permit it to charge reasonable costs to Sue and Joon Hong.

90.     As a direct and proximate result of said breaches, Plaintiffs suffered damages in an amount to be proven at trial.

91.     Defendants are liable to Plaintiffs for reasonable attorney's fees and costs.

**Count 2- Violations of the Duty of Good Faith and Fair Dealing**

92.     Plaintiffs re-allege and incorporates paragraphs above as if fully set forth therein and further alleges as follows.

93.     The wrongful acts and representations of Defendants' constitute violations of the duty of good faith and fair dealing that runs with the contracts.

CLASS ACTION COMPLAINT- 25

Harish Bharti, Esq.
**BHARTI LAW GROUP, PLLC**
6701 37th Ave NW■ Seattle, WA 98117
Ph: (206) 789-6122■ Fax (866) 664-0667
bhartilawyer@gmail.com

94.    As a proximate result of Defendants' violation of the duty of good faith and fair dealing, Plaintiffs has been damaged.

95.    As a direct and proximate result of said breaches, Plaintiffs suffered damages in an amount to be proven at trial.

96.    Defendants are liable to Plaintiffs and class for reasonable attorney's fees and costs.

### Count 3-Violations of Washington Consumer Protection Act
### (RCW §§ 19.86.010 et seq; 19.86.020; 19.86.090)

97.    Plaintiffs re-alleges and incorporates paragraphs above as if fully set forth therein and further alleges as follows.

98.    On behalf of themselves and a Class of similarly situated Class members, Plaintiffs re-allege all of the paragraphs above and incorporate them by reference under this Count.  Pursuant to RCW § 19.86.090, Plaintiffs bring this private civil action.

99.    As described therein, the Defendants' acts or practices are unfair and deceptive, and have the capacity to be deceptive, through both misrepresentations, collusion, kick-backs and withholding of material information from Plaintiffs and Washington consumers.  Defendants withheld material information; made misrepresentations about the material terms of the mortgage/servicing agreements without the informed consent or knowledge of

CLASS ACTION COMPLAINT- 26

customers; and failed to use due diligence and due process.

100.    The Defendants' acts or practices occur in commerce with the sale or service of mortgage.

101.    The Defendants' acts or practices impact the public interest. Numerous customers in the hundreds or thousands are affected by similar wrongful actions, similar withholding of material information, and similar misconduct. Defendants' practices have injured other persons including Plaintiffs, have the capacity to injure others, and have the capacity to injure and deceive other persons (RCW § 19.86.093(3)(a).

102.    The acts or practices described above constitute violations of the Consumer Protection Act ("CPA").  The CPA applies to conduct both before and after the sale and service of mortgages.

103.    Plaintiffs seek treble damages up to $25,000 per violation (RCW § 19.86.090); costs; and attorney's fees (RCW § 19.86.090) under this Count.

104.    As described therein, the Defendants' acts or practices are unfair and deceptive. As a direct and proximate result of said breaches, Plaintiffs and consumers suffered damages in an amount to be proven at trial.

105.    Defendants are liable to Plaintiffs and consumers for reasonable attorney's fees and costs.

**Count 4- Negligent Supervision**

CLASS ACTION COMPLAINT- 27

106.    Plaintiffs re-allege and incorporates paragraphs above as if fully set forth therein and further alleges as follows.

107.    A principal conducting activities through agents is subject to liability for harm resulting from the actions of such agents if the principal is negligent or reckless in the supervision of the agents' activities.

108.    Defendants and their agents – including but not limited to servicers, managers, and the owner – intentionally, recklessly, knowingly, and/or negligently authorize, endorse, encourage, instruct, promote, and motivate the wrongful acts alleged therein.

109.    As a direct and proximate result of the wrongful acts therein alleged, Plaintiffs and class members are damaged in an amount in an amount to be proven at trial.

110. Defendants are liable to Plaintiffs and class for reasonable attorney's fees and costs.

### Count 5- Breach of Fiduciary Duty -Against Defendant BOA

111.    Plaintiffs re-allege and incorporates paragraphs above as if fully set forth therein and further alleges as follows.

112.    Defendant BOA held funds in escrow on behalf of Plaintiffs whose mortgage it services.  These funds are designated for the purpose of paying insurance premiums as they come due, and any excess funds are to be returned

CLASS ACTION COMPLAINT- 28

to Plaintiffs under the terms of the mortgage agreement.

113.  Defendant BOA is in a fiduciary relationship with Plaintiffs for two specific reasons, (1) because BOA receives a greater economic benefit from these transactions than it would from a typical escrow transaction; and (2) Specifically, the debtor-creditor relationship transformed into a fiduciary relationship when Defendant BOA took it upon itself to manage borrowers' escrow account and then withdrew and/or charged money to Plaintiffs' escrow account for force-placed insurance charges, not properly chargeable to Plaintiffs. Defendant BOA violated its fiduciary duties when it previously to receive unlawful kickbacks or other compensation under the kickback scheme, which is clearly a greater economic benefit than what was contemplated under the Plaintiffs' mortgage agreement.

114.  Defendant BOA breached its fiduciary duties to Plaintiffs, by not disclosing that the charges for force-placed insurance were unreasonable.

115. These actions were undertaken by Defendant BOA in bad faith for its own benefit and were not intended to benefit the Plaintiffs.

116. As a direct result of Defendant BOA's actions and subversion of Plaintiffs' interest to its own in reaping extravagant and outrageous fees, and charging Plaintiffs for insurance when a portion of the charges was for illegal kickbacks, misrepresented as reasonable commissions that is normally charged

CLASS ACTION COMPLAINT- 29

Harish Bharti, Esq.
**BHARTI LAW GROUP, PLLC**
6701 37th Ave NW■ Seattle, WA 98117
Ph: (206) 789-6122■ Fax (866) 664-0667
bhartilawyer@gmail.com

for procuring such insurance.

117.   Plaintiffs have suffered injury in the form of unnecessary and inflated escrow charges and/or loss of funds from their escrow account.

118.   Defendants are liable to Plaintiffs and class for reasonable attorney's fees and costs.

## XI. CLASS

119.   Class consists of all persons in the State of Washington where defendants provided mortgage/serviced mortgage and arranged insurance coverage for the property within the six years before the commencement of this action.

## XII.    RELIEF REQUESTED

WTHEIREFORE, Plaintiffs pray for relief as follows:

1.    Actual and statutory damages for the torts and wrongful acts committed by Defendants in an amount to be determined at trial.

2.    An injunction or injunctions preventing Defendants or anyone acting in concert with Defendants from perpetrating acts using the scams outlined in this Class Action Complaint, as well as other scams to be discovered.

3.    Restitution to each Class member of damages incurred by breach of contracts, quasi contracts, contracts implied in fact, or contracts implied in law, of an estimated amount of sums by which Defendants were unjustly enriched or

CLASS ACTION COMPLAINT- 30

**Harish Bharti, Esq.**
**BHARTI LAW GROUP, PLLC**
**6701 37th Ave NW■ Seattle, WA 98117**
**Ph: (206) 789-6122■ Fax (866) 664-0667**
**bhartilawyer@gmail.com**

on the basis of quantum meruit.

4.    Treble damages pursuant to the Washington Consumer Protection Act, up to the statutory limit.

5.    Civil penalties pursuant to RCW 19.86.140 in the amount of $10,000 per violation for each and every violation of RCW 19.86.020.

6.    An award of Plaintiffs' reasonable costs and attorney's fees incurred in this action, pursuant to the Consumer Protection Act, RCW 19.86.090, or other laws as appropriate; and

7.    Any other award and relief the Court determines is just and equitable.

Date: 10-15-2019

| **BHARTI LAW GROUP, PLLC**<br>By; | **Law Office of Jason Anderson** |
|---|---|
| *[signature]* | /s/ Jason Anderson |
| Harish Bharti, WSBA # 23960<br>Attorney for Plaintiffs | Jason Anderson, WSBA # 32232<br>Attorney for Plaintiffs |

**Verification of Complaint**

I, Sue Hong, am the Plaintiffs in the above suit. I have read the above Class Action Complaint. To the best of my knowledge, I believe the above to be true. I demand a Jury trial.

Signed under penalty of perjury, under the laws of the State of Washington, at Seattle, Washington, on this 15th day of October, 2019;

Sue Hong

CLASS ACTION COMPLAINT-

Harish Bharti, Esq.
**BHARTI LAW GROUP, PLLC**
6701 37th Ave NW■ Seattle, WA 98117
Ph: (206) 789-6122■ Fax (866) 664-0667
bhartilawyer@gmail.com

**Verification of Complaint**

I, Joon Hong, am the Plaintiffs in the above suit. I have read the above Class Action Complaint. To the best of my knowledge, I believe the above to be true. I demand a Jury trial.

Signed under penalty of perjury, under the laws of the State of Washington, at Seattle, Washington, on this 15th day of October, 2019;

Joon Hong

CLASS ACTION COMPLAINT-

Harish Bharti, Esq.
**BHARTI LAW GROUP, PLLC**
6701 37th Ave NW■ Seattle, WA 98117
Ph: (206) 789-6122■ Fax (866) 664-0667
bhartilawyer@gmail.com

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

**20050729003434**

PACIFIC NW TIT DT          30.00
PAGE001 OF 011
07/29/2005 14:58
KING COUNTY, WA

Assessor's Parcel or Account Number: 1234
Abbreviated Legal Description:
PTN. TRACT 74, DES MOINES TWO ACRE TRACTS, VOL. 10, PG. 67

[Include                          title and range]
Full legal description located on page

Trustee:
LANDSAFE TITLE OF WASHING:



HONG          S

610          D2    001    002

Additional Grantee

——————— [Space Above This Line For Recording Data] ———————



[Doc ID #]

# DEED OF TRUST

MIN 1000157

FILED BY PNWT



## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated   JULY 25, 2005          , together with all Riders to this document.
**(B) "Borrower"** is
SUE HONG, AND JOON HONG, WIFE AND HUSBAND

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is
COUNTRYWIDE HOME LOANS, INC.
Lender is a CORPORATION
organized and existing under the laws of NEW YORK

WASHINGTON-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Initials: _SH_  _JH_

Page 1 of 11

-6A(WA) (0012).01    CHL (08/02)(d)    VMP MORTGAGE FORMS - (800)521-7291          Form 3048 1/01
CONV/VA

* 2 3 9 9 1 *

* 1 0 9 6 2 0 7 8 0 0 0 0 0 2 0 0 6 A *

DOC ID #:

Lender's address is
4500 Park Granada, Calabasas, CA 91302-1613
(D) "Trustee" is
LANDSAFE TITLE OF WASHINGTON
2707 COLBY AVENUE SUITE 1118, EVERETT, WA 98201
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated JULY 25, 2005        . The Note states that Borrower owes Lender
SIX HUNDRED THIRTY THREE THOUSAND THREE HUNDRED and 00/100

Dollars (U.S. $ 633,300.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than AUGUST 01, 2035        .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
|---|---|---|
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY        of        KING                :
[Type of Recording Jurisdiction]            [Name of Recording Jurisdiction]

Initials:

DOC ID #:

THE NORTH 60 FEET OF THE EAST HALF OF THE EAST HALF OF TRACT 74, DES
MOINES TWO ACRE TRACTS, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME
10 OF PLATS, PAGE 67, IN KING COUNTY, WASHINGTON.

which currently has the address of
                        22515 10TH AVENUE SOUTH, DES MOINES
                                        [Street/City]
Washington     98198     ("Property Address"):
               [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also
be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the
"Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by
Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for
Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,
but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender
including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the
right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of
record. Borrower warrants and will defend generally the title to the Property against all claims and demands,
subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform
covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real
property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower
shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment
charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to
Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency.
However, if any check or other instrument received by Lender as payment under the Note or this Security
Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under
the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender:
(a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any
such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or
entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such
other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender
may return any payment or partial payment if the payment or partial payments are insufficient to bring the
Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current,
without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in
the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each
Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied
funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If
Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return
them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under
the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future
against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument
or performing the covenants and agreements secured by this Security Instrument.

    **2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments
accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the
Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to
each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to
late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal
balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a
sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the

Initials:

DOC ID #:

late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees, and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Initials: JH

DOC ID #:

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent

Initials: JH

DOC ID #:

the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Initials: _AH_ _JH_

DOC ID #:

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

Initials:

DOC ID #: ~~000~~

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action. Initials: _JH_

DOC ID #:

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous

Initials:

DOC ID #:

Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of the right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance.

**24. Substitute Trustee.** In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Use of Property.** The Property is not used principally for agricultural purposes.

**26. Attorneys' Fees.** Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument. The term "attorneys' fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal.

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

Initials: _JH_

DOC ID #: █████████

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _____ (Seal)
                               SUE HONG                 -Borrower

_____        _____ (Seal)
                               JOON HONG                -Borrower

                               _____ (Seal)
                                                        -Borrower

                               _____ (Seal)
                                                        -Borrower

STATE OF WASHINGTON   *King*        } ss:
County of
    On this day personally appeared before me

    *Sue Hong and Joon Hong*

to me known to be the individual(s) described in and who executed the within and foregoing instrument, and acknowledged that he/she/they signed the same as his/her/their free and voluntary act and deed, for the uses and purposes therein mentioned.
    GIVEN under my hand and official seal this    *25th*    day of    *July, 2005*.



                               _____
                               Notary Public in and for the State of Washington, residing at
                               *Fed Way*
                               My Appointment Expires on
                               *5/19/06*

Prepared by: KELLI ADAM



# NOTE

JULY 25, 2005                          FEDERAL WAY                          WASHINGTON
[Date]                                      [City]                                    [State]

.       22515 10TH AVENUE SOUTH, DES MOINES, WA 98198
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 633,300.00          (this   amount   is   called "Principal"), plus interest, to the order of the Lender. The Lender is
COUNTRYWIDE HOME LOANS, INC.                                                                                    .
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    5.750 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  FIRST          day of each month beginning on
SEPTEMBER 01, 2005  . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  AUGUST 01, 2035        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 3,695.77          .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  FIFTEEN        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Initials: _____

 -5N (0207).01      CHL (010/04)(d)      VMP Mortgage Solutions, Inc. (800)521-7291                  Form 3200 1/01



* 2 3 9 9 1 *                                    * 1 0 9 6 2 0 7 8 0 0 0 0 0 0 2 0 0 5 N *



**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

| | |
|---|---|
| _____ (Seal) | _____ (Seal) |
| SUE HONG                    -Borrower | -Borrower |
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |

*[Sign Original Only]*

ØŠÒÖ
Œ FJÁJÔVÁGÆC̆ÆK HÁ T
SÓ Õ Õ UWÞV Ý
Ù Ú Ü Q Ü Ó UWÚV Ō ŠŌÜS
Ò ŠÒÖ
Ô CÚ Ä FJ J JJJ SÞV

## IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
## IN AND FOR KING COUNTY

| | |
|---|---|
| SUE HONG and JOON HONG, on behalf of Plaintiffs and all other similarly situated, <br> Plaintiffs <br> vs. <br><br> BANK OF AMERICA, N.A, individually and as successor-in-interest, QBE INSURANCE <br> CORP., and DOES 1-10. <br><br> Defendants. | CASE NO. <br><br> **JURY DEMAND** |

Plaintiffs hereby demand a Jury of six(6) persons.

Date: 10-15-2019

| **BHARTI LAW GROUP, PLLC** <br> By; <br><br> _[signature]_ <br><br> Harish Bharti, WSBA # 23960 <br> Attorney for plaintiffs | **Law Office of Jason Anderson** <br><br> /s/ Jason Anderson <br> _____ <br> Jason Anderson, WSBA # 32232 <br> Attorney for plaintiffs |

JURY DEMAND- 1

ØŠÒÖ

ŒFJÁÔVÍ GHÆGK HÁÚT
SŒ Õ ÕUWÞ VÝ
ÙWÚÕÜ Œ Ü ÕUWÜVÕŠÒÜS
Ò ŠÒÖ
ÔŒÜ ÀMÉ JÉ JJ JÉ SÞV

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
**FOR THE COUNTY OF KING**

| Sue Hong et al | NO. 19-2-27999-1  KNT |
|---|---|
| Plaintiff(s) | ORDER SETTING CIVIL CASE SCHEDULE |
| vs | ASSIGNED JUDGE: ERLICK, Dept. 51 |
| BANK OF AMERICA ET AL | FILED DATE: 10/23/2019 |
| Defendant(s) | TRIAL DATE:10/19/2020 |

A civil case has been filed in the King County Superior Court and will be managed by the Case Schedule on Page 3 as ordered by the King County Superior Court Presiding Judge.

## I.  NOTICES

**NOTICE TO PLAINTIFF:** The Plaintiff may serve a copy of this **Order Setting Case Schedule (*Schedule*)** on the Defendant(s) along with the ***Summons and Complaint/Petition*.**  Otherwise, the Plaintiff shall serve the *Schedule* on the Defendant(s) within 10 days after the later of: (1) the filing of the ***Summons and Complaint/Petition*** or (2) service of the Defendant's first response to the ***Complaint/Petition***, whether that response is a ***Notice of Appearance***, a response, or a Civil Rule 12 (CR 12) motion.  The ***Schedule*** may be served by regular mail, with proof of mailing to be filed promptly in the form required by Civil Rule 5 (CR 5).

**NOTICE TO ALL PARTIES:**
All attorneys and parties should make themselves familiar with the King County Local Rules [*KCLCR*] -- especially those referred to in this ***Schedule***. In order to comply with the ***Schedule***, it will be necessary for attorneys and parties to pursue their cases vigorously from the day the case is filed. For example, discovery must be undertaken promptly in order to comply with the deadlines for joining additional parties, claims, and defenses, for disclosing possible witnesses [*See KCLCR 26*], and for meeting the discovery cutoff date [*See KCLCR 37(g)*].
**You are required to give a copy of these documents to all parties in this case.**

1

**I. NOTICES (continued)**

**CROSSCLAIMS, COUNTERCLAIMS AND THIRD PARTY COMPLAINTS:**
A filing fee of **$240** must be paid when any answer that includes additional claims is filed in an existing case.

**KCLCR 4.2(a)(2)**
A Confirmation of Joinder, Claims and Defenses or a Statement of Arbitrability must be filed by the deadline in the schedule.  The court will review the confirmation of joinder document to determine if a hearing is required.  If a Show Cause order is issued, all parties cited in the order must appear before their Chief Civil Judge.

**PENDING DUE DATES CANCELED BY FILING PAPERS THAT RESOLVE THE CASE:**
When a final decree, judgment, or order of dismissal of <u>all parties and claims</u> is filed with the Superior Court Clerk's Office, and a courtesy copy delivered to the assigned judge, all pending due dates in this *Schedule* are automatically canceled, including the scheduled Trial Date. It is the responsibility of the parties to 1) file such dispositive documents within 45 days of the resolution of the case, and 2) strike any pending motions by notifying the bailiff to the assigned judge.

 Parties may also authorize the Superior Court to strike all pending due dates and the Trial Date by filing a *Notice of Settlement* pursuant to KCLCR 41, and forwarding a courtesy copy to the assigned judge. If a final decree, judgment or order of dismissal of <u>all parties and claims</u> is not filed by 45 days after a *Notice of Settlement*, the case may be dismissed with notice.

**If you miss your scheduled Trial Date**, the Superior Court Clerk is authorized by KCLCR 41(b)(2)(A) to present an *Order of Dismissal*, without notice, for failure to appear at the scheduled Trial Date.

**NOTICES OF APPEARANCE OR WITHDRAWAL AND ADDRESS CHANGES:**
*All parties to this action must keep the court informed of their addresses.* When a Notice of Appearance/Withdrawal or Notice of Change of Address is filed with the Superior Court Clerk's Office, parties must provide the assigned judge with a courtesy copy.

 **ARBITRATION FILING <u>AND</u> TRIAL DE NOVO POST ARBITRATION FEE:**
A Statement of Arbitrability must be filed by the deadline on the schedule **if the case is subject to mandatory arbitration** and service of the original complaint and all answers to claims, counterclaims and cross-claims have been filed.  If mandatory arbitration is required after the deadline, parties must obtain an order from the assigned judge transferring the case to arbitration. **Any party filing a Statement must pay a $250 arbitration fee**. If a party seeks a trial de novo when an arbitration award is appealed, a fee of $400 and the request for trial de novo must be filed with the Clerk's Office Cashiers.

**NOTICE OF NON-COMPLIANCE FEES:**
**All** parties will be assessed a fee authorized by King County Code 4A.630.020 whenever the Superior Court Clerk must send notice of non-compliance of schedule requirements <u>and/or</u> Local Civil Rule 41.

**King County Local Rules are available for viewing at <u>www.kingcounty.gov/courts/clerk.</u>**

## II. CASE SCHEDULE

| * | CASE EVENT | EVENT DATE |
|---|------------|------------|
|   | Case Filed and Schedule Issued. | 10/23/2019 |
| * | Last Day for Filing Statement of Arbitrability without a Showing of Good Cause for Late Filing [*See KCLMAR 2.1(a) and Notices on Page 2*].<br>**$220 arbitration fee must be paid** | 04/01/2020 |
| * | **DEADLINE** to file Confirmation of Joinder if not subject to Arbitration [*See KCLCR 4.2(a) and Notices on Page 2*]. | 04/01/2020 |
|   | **DEADLINE** for Hearing Motions to Change Case Assignment Area [*KCLCR 82(e)*]. | 04/15/2020 |
|   | **DEADLINE** for Disclosure of Possible Primary Witnesses [*See KCLCR 26(k)*]. | 05/18/2020 |
|   | **DEADLINE** for Disclosure of Possible Additional Witnesses [*See KCLCR 26(k)*]. | 06/29/2020 |
|   | **DEADLINE** for Jury Demand [*See KCLCR 38(b)(2)*]. | 07/13/2020 |
|   | **DEADLINE** for a Change in Trial Date [*See KCLCR 40(e)(2)*]. | 07/13/2020 |
|   | **DEADLINE** for Discovery Cutoff [*See KCLCR 37(g)*]. | 08/31/2020 |
|   | **DEADLINE** for Engaging in Alternative Dispute Resolution [*See KCLCR 16(b)*]. | 09/21/2020 |
|   | **DEADLINE**: Exchange Witness & Exhibit Lists & Documentary Exhibits [*KCLCR 4(j)*]. | 09/28/2020 |
| * | **DEADLINE** to file Joint Confirmation of Trial Readiness [*See KCLCR 16(a)(1)*] | 09/28/2020 |
|   | **DEADLINE** for Hearing Dispositive Pretrial Motions [*See KCLCR 56; CR 56*]. | 10/05/2020 |
| * | Joint Statement of Evidence [*See KCLCR 4 (k)*] | 10/12/2020 |
|   | **DEADLINE** for filing Trial Briefs, Proposed Findings of Fact and Conclusions of Law and Jury Instructions (Do not file proposed Findings of Fact and Conclusions of Law with the Clerk) | 10/12/2020 |
|   | Trial Date [*See KCLCR 40*]. | 10/19/2020 |

The * indicates a document that must be filed with the Superior Court Clerk's Office by the date shown.

## III. ORDER

Pursuant to King County Local Rule 4 [*KCLCR 4*], IT IS ORDERED that the parties shall comply with the schedule listed above.  Penalties, including but not limited to sanctions set forth in Local Rule 4(g) and Rule 37 of the Superior Court Civil Rules, may be imposed for non-compliance.  It is FURTHER ORDERED that the party filing this action **must** serve this *Order Setting Civil Case Schedule* and attachment on all other parties.


DATED:     10/23/2019

_____
PRESIDING JUDGE

1

## IV. ORDER ON CIVIL PROCEEDINGS FOR ASSIGNMENT TO JUDGE

**READ THIS ORDER BEFORE CONTACTING YOUR ASSIGNED JUDGE.**
This case is assigned to the Superior Court Judge whose name appears in the caption of this case schedule.  The assigned Superior Court Judge will preside over and manage this case for all pretrial matters.

**COMPLEX LITIGATION:**  If you anticipate an unusually complex or lengthy trial, please notify the assigned court as soon as possible.

**APPLICABLE RULES:**  Except as specifically modified below, all the provisions of King County Local Civil Rules 4 through 26 shall apply to the processing of civil cases before Superior Court Judges.  The local civil rules can be found at www.kingcounty.gov/courts/clerk/rules/Civil.

**CASE SCHEDULE AND REQUIREMENTS:**  Deadlines are set by the case schedule, issued pursuant to Local Civil Rule 4.

**THE PARTIES ARE RESPONSIBLE FOR KNOWING AND COMPLYING WITH ALL DEADLINES IMPOSED BY THE COURT'S LOCAL CIVIL RULES.**

### A. Joint Confirmation regarding Trial Readiness Report
No later than twenty one (21) days before the trial date, parties shall complete and file (with a copy to the assigned judge) a joint confirmation report setting forth whether a jury demand has been filed, the expected duration of the trial, whether a settlement conference has been held, and special problems and needs (e.g., interpreters, equipment).

The Joint Confirmation Regarding Trial Readiness form is available at www.kingcounty.gov/courts/scforms. If parties wish to request a CR 16 conference, they must contact the assigned court.  Plaintiff's/petitioner's counsel is responsible for contacting the other parties regarding the report.

### B. Settlement/Mediation/ADR
a. Forty five (45) days before the trial date, counsel for plaintiff/petitioner shall submit a written settlement demand.  Ten (10) days after receiving plaintiff's/petitioner's written demand, counsel for defendant/respondent shall respond (with a counter offer, if appropriate).

b. Twenty eight (28) days before the trial date, a Settlement/Mediation/ADR conference shall have been held.  FAILURE TO COMPLY WITH THIS SETTLEMENT CONFERENCE REQUIREMENT MAY RESULT IN SANCTIONS.

### C. Trial
Trial is scheduled for 9:00 a.m. on the date on the case schedule or as soon thereafter as convened by the court.  The Friday before trial, the parties should access the court's civil standby calendar on the King County Superior Court website www.kingcounty.gov/courts/superiorcourt to confirm the trial judge assignment.

## MOTIONS PROCEDURES

### A. Noting of Motions

**Dispositive Motions:**  All summary judgment or other dispositive motions will be heard with oral argument before the assigned judge.  The moving party must arrange with the hearing judge a date and time for the hearing, consistent with the court rules.  Local Civil Rule 7 and Local Civil Rule 56 govern procedures for summary judgment or other motions that dispose of the case in whole or in part.  The local civil rules can be found at www.kingcounty.gov/courts/clerk/rules/Civil.

**Non-dispositive Motions:**  These motions, which include discovery motions, will be ruled on by the assigned judge without oral argument, unless otherwise ordered.  All such motions must be noted for a date by which the ruling is requested; this date must likewise conform to the applicable notice requirements. Rather than noting a time of day, the Note for Motion should state "Without Oral Argument."  Local Civil Rule

1

7 governs these motions, which include discovery motions.  The local civil rules can be found at www.kingcounty.gov/courts/clerk/rules/Civil.

**Motions in Family Law Cases not involving children:** Discovery motions to compel, motions in limine, motions relating to trial dates and motions to vacate judgments/dismissals shall be brought before the assigned judge.  All other motions should be noted and heard on the Family Law Motions calendar.  Local Civil Rule 7 and King County Family Law Local Rules govern these procedures.  The local rules can be found at www.kingcounty.gov/courts/clerk/rules.

**Emergency Motions:**   Under the court's local civil rules, emergency motions will usually be allowed only upon entry of an Order Shortening Time.  However, some emergency motions may be brought in the Ex Parte and Probate Department as expressly authorized by local rule.  In addition,  discovery disputes may be addressed by telephone call and without written motion, if the judge approves in advance.

**B.  Original Documents/Working Copies/ Filing of Documents:  All original documents must be filed with the Clerk's Office.**  Please see information on the Clerk's Office website at www.kingcounty.gov/courts/clerk regarding the requirement outlined in LGR 30 that attorneys must e-file documents in King County Superior Court.  The exceptions to the e-filing requirement are also available on the Clerk's Office website. The local rules can be found at www.kingcounty.gov/courts/clerk/rules.

The working copies of all documents in support or opposition must be marked on the upper right corner of the first page with the date of consideration or hearing and the name of the assigned judge.  The assigned judge's working copies must be delivered to his/her courtroom or the Judges' mailroom.  Working copies of motions to be heard on the Family Law Motions Calendar should be filed with the Family Law Motions Coordinator.  Working copies can be submitted through the Clerk's office E-Filing application at www.kingcounty.gov/courts/clerk/documents/eWC.

**Service of documents:** Pursuant to Local General Rule 30(b)(4)(B), e-filed documents shall be electronically served through the e-Service feature within the Clerk's eFiling application.  Pre-registration to accept e-service is required.  E-Service generates a record of service document that can be e-filed.  Please see the Clerk's office website at www.kingcounty.gov/courts/clerk/documents/efiling regarding E-Service.

**Original Proposed Order:** Each of the parties must include an original proposed order granting requested relief with the working copy materials submitted on any motion.  **Do not file the original of the proposed order with the Clerk of the Court**.   Should any party desire a copy of the order as signed and filed by the judge, a pre-addressed, stamped envelope shall accompany the proposed order.  The court may distribute orders electronically.  Review the judge's website for information: www.kingcounty.gov/courts/SuperiorCourt/judges.

**Presentation of Orders for Signature:** All orders must be presented to the assigned judge or to the Ex Parte and Probate Department, in accordance with Local Civil Rules 40 and 40.1. Such orders, if presented to the Ex Parte and Probate Department, shall be submitted through the E-Filing/Ex Parte via the Clerk application by the attorney(s) of record. E-filing is not required for self-represented parties (non-attorneys). If the assigned judge is absent, contact the assigned court for further instructions.  If another judge enters an order on the case, counsel is responsible for providing the assigned judge with a copy.

**Proposed orders finalizing settlement and/or dismissal by agreement of all parties shall be presented to the  Ex Parte and Probate Department.**  Such orders shall be submitted through the E-Filing/Ex Parte via the Clerk application by the attorney(s) of record. E-filing is not required for self-represented parties (non-attorneys). Formal proof in Family Law cases must be scheduled before the assigned judge by contacting the bailiff, or formal proof may be entered in the Ex Parte Department.  **If final order and/or formal proof are entered in the Ex Parte and Probate Department, counsel is responsible for providing the assigned judge with a copy.**

**C. Form**
Pursuant to Local Civil Rule 7(b)(5)(B), the initial motion and opposing memorandum shall not exceed 4,200 words and reply memoranda shall not exceed 1,750 words without authorization of the court. The word count

includes all portions of the document, including headings and footnotes, except 1) the caption; 2) table of contents and/or authorities, if any; and 3): the signature block. Over-length memoranda/briefs and motions supported by such memoranda/briefs may be stricken.

***IT IS SO ORDERED.  FAILURE TO COMPLY WITH THE PROVISIONS OF THIS ORDER MAY RESULT IN DISMISSAL OR OTHER SANCTIONS.  PLAINTIFF/PEITITONER SHALL FORWARD A COPY OF THIS ORDER AS SOON AS PRACTICABLE TO ANY PARTY WHO HAS NOT RECEIVED THIS ORDER.***

_____
PRESIDING JUDGE

ØŠÒÖ

GŒFJÁJÔVÁGHÆGK HÁÚT
SÔÕÁÔUWPVÝ
ÙWÚÒÜÕJÜÁÚWÜVÁÕŠÒÜS
ÒŠÒÖ
Ô ÜÒÄÆFJ JJJ SÞV

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF KING**

| | |
|---|---|
| Sue Hong et al | No. 19-2-27999-1  KNT |
| vs | **CASE INFORMATION COVER SHEET AND AREA DESIGNATION** |
| Bank of America et al | (CICS) |

**CAUSE OF ACTION**

COM - Commercial

**AREA OF DESIGNATION**

KNT          All of King County south of Interstate 90 except those areas included in the Seattle Case Assignment Area.